## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-007

Filing Date: February 12, 2010

Docket No. 31,186

STATE OF NEW MEXICO,

   Plaintiff-Respondent,

v.

DONALD BULLCOMING,

   Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Thomas J. Hynes, District Court Judge

Hugh W. Dangler, Chief Public Defender
Susan Roth, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Respondent

Elizabeth A. Trickey
Santa Fe, NM

for Amicus Curiae
New Mexico Department of Health, Scientific Laboratory Division

## OPINION

**MAES, Justice.**

1

**{1}**     Defendant, Donald Bullcoming, appeals his conviction of aggravated DWI, a fourth-degree felony, contrary to NMSA 1978, Section 66-8-102 (2005, prior to amendments through 2008).  Of the three issues that Defendant raises, the main question presented in this appeal is whether a laboratory report of Defendant's blood draw results is testimonial evidence subject to the Confrontation Clause.  We first addressed this issue in *State v. Dedman*, 2004-NMSC-037, ¶¶ 30, 45-46, 136 N.M. 561, 102 P.3d 628, and followed the United States Supreme Court case in *Crawford v. Washington*, 541 U.S. 36 (2004), to hold that (1) blood alcohol reports are public records and (2) they are non-testimonial under *Crawford* because public records are not "investigative or prosecutorial" in nature.  We reverse our holding in *Dedman* in light of the recent United States Supreme Court case of *Melendez-Diaz v. Massachusetts*, which held that the certificates reporting the results of forensic analysis were "quite plainly affidavits" and thus "there [was] little doubt that [they] fall within the 'core class of testimonial statements,'" governed by the Confrontation Clause. 557 U.S. ___, ___, 129 S. Ct. 2527, 2532 (2009) (5-4 decision) (quoting *Crawford*, 541 U.S. at 51). Although the blood alcohol report was testimonial, we conclude that its admission did not violate the Confrontation Clause, because the analyst who prepared the report was a mere scrivener who simply transcribed the results generated by a gas chromatograph machine and, therefore, the live, in-court testimony of another qualified analyst was sufficient to satisfy Defendant's right to confrontation.

**{2}**     As to Defendant's other two issues, we hold that while Officer Snowbarger was never formally accepted as an expert witness, the parties understood he was being treated as an expert witness, and could give his opinion regarding the cause of the accident without witnessing it.  We further hold that although the trial court erred in admitting Defendant's brother's (Brother) out-of-court hearsay statements, we find this error to be harmless because of the overwhelming evidence against Defendant.  We affirm Defendant's convictions.

## I.     FACTS AND PROCEDURAL HISTORY

**{3}**     We begin with a summary of the facts that the jury reasonably could have found at Defendant's trial.  The facts will be further developed in the discussion of the issues.  Defendant's vehicle rear-ended Dennis (Randy) Jackson's vehicle while stopped at the intersection of 30th Street and Farmington Avenue in Farmington, New Mexico.  Mr. Jackson exited his vehicle to exchange insurance information with Defendant.  Mr. Jackson noticed the smell of alcohol on Defendant's breath and his bloodshot eyes, and instructed his wife to call police.  When Defendant was informed that police were on their way, Defendant excused himself to the restroom.

**{4}**     Officer Marty Snowbarger of the Farmington Police Department responded to the call, learned that Defendant had left the accident scene, and went to find him.  Officer Snowbarger drove his motorcycle in the direction where Defendant was seen walking.  He first encountered and questioned Brother, who had been a passenger in the vehicle and also had left the accident scene. Brother explained to Officer Snowbarger that Defendant was the driver of the vehicle at the time of the accident, and pointed east to indicate the direction that Defendant had fled.  Soon thereafter, Officer Snowbarger spotted Defendant crossing a nearby bridge at a quick pace and followed him

behind a building that was east of the bridge. Officer Snowbarger noticed that Defendant exhibited signs of intoxication such as watery, bloodshot eyes, slurred speech, and smelled the odor of alcohol coming from Defendant. Defendant was taken back to the accident scene in a patrol vehicle. Officer David Rock, who had recently arrived to the accident scene, noticed that Defendant swayed while walking toward the sidewalk. Officer Rock noticed Defendant's bloodshot eyes and the odor of alcohol coming from Defendant's breath and then asked Defendant if he had been drinking that day. Defendant responded that he had a drink at 6:00 a.m., but had not been drinking since then. The Defendant performed a series of field sobriety tests, which he failed. Defendant was arrested for DWI and transported to the Farmington police station for booking. Because Defendant refused to take a breath test, Officer Rock obtained a search warrant to perform a blood alcohol test. Defendant had a blood alcohol content (BAC) of 0.21gms/100ml, well over the legal limit of 0.08gms/100ml. Defendant was convicted by jury of DWI and sentenced to a prison term of two years.

**{5}** Defendant appealed to the Court of Appeals raising five issues:

(1) that the district court erred in denying a motion for mistrial based on the prosecutor's improper comment on silence in closing argument, (2) that the district court abused its discretion by allowing testimony by a police officer about the cause of an accident involving Defendant when the officer did not witness the accident, (3) that the district court erred in admitting into evidence blood draw results when the analyst who prepared the results was not available to testify, (4) that the district court erred in admitting into evidence the hearsay statement of Defendant's brother, and (5) that the State did not sufficiently prove Defendant's four prior DWI convictions.

*State v. Bullcoming*, 2008-NMCA-097, ¶ 1, 144 N.M. 546, 189 P.3d 679. The Court of Appeals determined that (1) the prosecutor was commenting on Defendant's pre-arrest silence, which is permissible for impeachment purposes, *id.* ¶ 7; (2) the officer was properly qualified as an expert witness and could provide his opinion about the cause of the accident, *id.* ¶ 11; (3) the blood alcohol report was non-testimonial, and thus its admission did not violate the Confrontation Clause, *id.* ¶ 17; (4) Brother's statements were not hearsay because they were not offered for the truth of the matter asserted and their admission did not prejudice Defendant, *id.* ¶ 19; and (5) that there was sufficient evidence to prove Defendant's prior convictions, *id.* ¶ 27. The Court of Appeals concluded that Defendant's claims were without merit and affirmed his conviction. *Id.* ¶¶ 1, 28. Defendant's petition for certiorari raised five issues. We granted certiorari to consider the following three issues: (1) whether the trial court abused its discretion by allowing Officer Snowbarger to testify regarding the cause of Defendant's accident; (2) whether the trial court erred in admitting the blood draw results as a business record, over defense counsel's confrontation objection, when the analyst who prepared the results was not available to testify; and (3) whether the trial court erred in admitting, over defense counsel's objection, hearsay testimony through Officer Snowbarger of an eyewitness, Brother, who did not testify at trial.

## II.    DISCUSSION

**A.** **Whether the Trial Court Erred in Admitting the Blood Draw Results as a Business Record, Over Defense Counsel's Confrontation Objection, When the Analyst Who Prepared the Results Was Not Available to Testify**

{6} At trial, the State presented the Report of Blood Alcohol Analysis of Defendant's blood through Gerasimos Razatos, an analyst for the New Mexico Department of Health, Scientific Laboratory Division, Toxicology Bureau (SLD), who helps in overseeing the breath and blood alcohol programs throughout the state. The report is a two-page document and was admitted into evidence as Exhibit 1. It is attached to this opinion for reference. The first page is composed of Part A and Part B. Part A contains chain of custody information, specifically identifying the arresting officer, the donor, the person who drew the donor's blood, and the date, time, and place of the blood draw. Part A also specifies the information sought by the officer and the location where the results are to be sent.

{7} Part B has four parts that primarily provide chain of custody information. The receiving employee signs the first section of Part B, certifying the type of specimen that was received, how it was received, whether the seal was intact, and that the employee complied with the procedures delineated in paragraph two of the second page of Exhibit 1. The analyst signs the second section of Part B, certifying that the seal of the sample was received intact and was broken in the laboratory, that the analyst followed the procedures in paragraph number three on the second page of Exhibit 1, and that the test results were recorded by the analyst. A reviewer signs the third section of Part B, certifying that the analyst and the analyst's supervisor are qualified to conduct the analysis and that the established procedures had been followed. Finally, a laboratory employee signs the fourth section of Part B, certifying that a legible copy of the report had been mailed to the donor. Finally, the second page of Exhibit 1 identifies the method used for testing the blood sample and details the procedures that must be followed by laboratory personnel.

{8} The analyst who prepared Exhibit 1 did not testify at Defendant's trial because he "was very recently put on unpaid leave." However, Razatos, who had no involvement in preparing Exhibit 1, testified about Defendant's BAC and the standard procedures of the laboratory. He testified that the instrument used to analyze Defendant's blood was a gas chromatograph machine. The detectors within the gas chromatograph machine detect the compounds and the computer prints out the results. When Razatos was asked by the prosecutor whether "any human being could look and write and just record the result," he answered, "Correct." On cross-examination he also testified that this particular machine prints out the result and then it is transcribed to Exhibit 1. Both the nurse who drew the blood and the officer who observed the blood draw and who also prepared and sent the blood kit to SLD, testified at trial and were available for cross-examination.

{9} Defendant objected to the admission of Exhibit 1 because the analyst who performed the test was not at trial to testify, which he argued would violate Defendant's constitutional right to confrontation. He also argued that, because Exhibit 1 was prepared in anticipation of trial, it did not qualify as a business record. The trial court admitted Exhibit 1 as a business record exception to the

4

rule against hearsay. Rule 11-803(F), (H) NMRA. The trial court also held that the admission of Exhibit 1 was not prohibited by *Crawford*. Exhibit 1 was shown to the jury.

**{10}** Whether Exhibit 1 was admitted in violation of the Confrontation Clause of the United States Constitution is a question of law which we review de novo. *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213.

**{11}** The United States Supreme Court in *Crawford* held that the Confrontation Clause prohibits the admission of "testimonial statements" unless the declarant is unavailable to testify, "and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. Though the Court declined to definitively state what constitutes a "testimonial" statement, it described the various formulations of the core class of testimonial statements covered by the Confrontation Clause. *Id.* at 51-52.

**{12}** In *Dedman*, we followed *Crawford* to hold that (1) blood alcohol reports prepared by SLD are public records, and (2) they are non-testimonial under *Crawford* because public records are not "investigative or prosecutorial" in nature. *Dedman*, 2004-NMSC-037, ¶¶ 30, 45-46. We first determined that the reports were admissible because they fell within the hearsay exception for "public records" since they "follow a routine manner of preparation that guarantees a certain level of comfort as to their trustworthiness." *Id.* ¶ 24. Second, though we recognized that the "right of confrontation requires an independent inquiry that is not satisfied by a determination that evidence is admissible under a hearsay exception," we essentially held that blood alcohol reports were not subject to the Confrontation Clause for the same reasons that we considered them to be public records. *Id.* ¶ 25. We determined that the main concern of the Confrontation Clause was the "'[i]nvolvement of government officers in the production of testimony with an eye toward trial,' because this provide[d] a 'unique potential for prosecutorial abuse.'" *Id.* ¶ 29 (quoting *Crawford*, 541 U.S. at 56 n.7). Since blood alcohol reports are not prepared by law enforcement personnel and are neither investigative nor prosecutorial, they do not present the same potential for abuse. *Id.* ¶¶ 29-30. Thus, we concluded that the blood alcohol tests in question were non-testimonial because, as public records, their preparation was "routine, non-adversarial, and made to ensure an accurate measurement." *Id.* ¶ 30.

**{13}** While this appeal was pending, the United States Supreme Court in *Melendez-Diaz* considered whether a certificate prepared by a forensic laboratory analyst fell within the core class of testimonial statements identified in *Crawford*. *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2532. The plurality held that the certificates, which reported the results of forensic analysis showing that the substance found in seized bags was cocaine of a certain weight, were "quite plainly affidavits" and thus "[t]here [was] little doubt that [they] fall within the 'core class of testimonial statements,'" governed by the Confrontation Clause. *Id.* Justice Scalia delivered the opinion of the Court in which Justices Stevens, Souter, Thomas and Ginsburg joined. Justice Thomas filed a concurring opinion adhering to his position in *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring in part and concurring in judgment), that "[t]he Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials,

such as affidavits, depositions, prior testimony, or confessions." *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2543 (Thomas, J., concurring) (internal quotation marks and citation omitted). Because the certificates in question were "quite plainly affidavits," Justice Thomas agreed with the majority that they fall within the core class of testimonial statements. *Id.*

{14}    The other four Justices that joined Justice Thomas to form the plurality went further, stating that the certificates were testimonial because they were "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* at ___, 129 S. Ct at 2531 (quoting *Crawford*, 541 U.S. at 52), and were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination,'" *id.* at ___, 129 S. Ct. at 2532 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)). They reasoned that the Sixth Amendment only contemplated "two classes of witnesses—those against the defendant and those in his favor" and that "there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." *Id.* at ___, 129 S. Ct. at 2534. Forensic evidence is neither immune from manipulation nor inherently "neutral." *Id.* at ___, 129 S. Ct. at 2536.

{15}    On the other hand, the dissent authored by Justice Kennedy distinguishes between "conventional witness[es]," which he defines as those "who [have] personal knowledge of some aspect of the defendant's guilt," and laboratory analysts who perform tests. *Id.* at ___, 129 S. Ct. at 2543 (Kennedy, J., dissenting). Kennedy also focused on the policy implications of requiring laboratory analysts to testify, and argued that *Melendez-Diaz* "threatens to disrupt forensic investigations across the country and to put prosecutions nationwide at risk of dismissal based on erratic, all-too-frequent instances when a particular laboratory technician . . . simply does not or cannot appear." *Id.* at ___, 129 S. Ct. at 2549.

{16}    *Melendez-Diaz* throws into doubt our assessment in *Dedman* that blood alcohol reports as public records are inherently immune from governmental abuse. First, *Melendez-Diaz* clarified that "analysts' certificates—like police reports generated by law enforcement officials—do not qualify as business or public records" because they are "calculated for use essentially in the court, not in the business." *Id.* at ___, 129 S. Ct. at 2538 (internal quotation marks and citation omitted). Though "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status, . . . that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Id.* Second, *Melendez-Diaz* made clear that the same concerns of governmental abuse which exist in the production of evidence by law enforcement exist in the production of forensic evidence. The Court noted that "[a] forensic analyst responding to a request from a law enforcement official may feel pressure—or have an incentive—to alter the evidence in a manner favorable to the prosecution." *Id.* at ___, 129 S. Ct. at 2536. For these reasons, we conclude that *Dedman*'s determination that blood alcohol tests are non-testimonial does not comport with the Supreme Court's ruling in *Melendez-Diaz*, and *Dedman* is overruled.

{17}    The State argues that *Melendez-Diaz* can be distinguished from the case at bar because the forensic reports in *Melendez-Diaz* were sworn affidavits and Exhibit 1 in the present case is not a

sworn document. The State argues that *Melendez-Diaz* was a plurality opinion and, therefore, the holding "may be viewed as that position taken by those Members who concurred in the judgment[ ] on the narrowest grounds." *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976); *accord Marks v. United States*, 430 U.S. 188 (1977). The narrowest grounds for the holding are found in Justice Thomas's concurrence. He joined the majority because he agreed that the reports in question were "plainly affidavits," and thus clearly were "formalized testimonial materials" governed by the Confrontation Clause. *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2543 (Thomas, J., concurring). The State therefore argues that, because Exhibit 1 in the present case was not an affidavit sworn by the declarant, it is not within the formalized testimonial materials described in *Melendez-Diaz* and, therefore, not subject to the Confrontation Clause.

{18}     Contrary to the State's argument, an affidavit is merely listed as one of several examples of "formalized testimonial materials" described in *Melendez-Diaz*. *Id*. at ___, 129 S. Ct. at 2532. ("[T]he Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions." (internal quotation marks and citation omitted)). Even prior to *Melendez-Diaz*, it was made clear in *Crawford* that "the absence of oath was not dispositive" in determining if a statement is testimonial. *Crawford*, 541 U.S. at 52. Exhibit 1 in this case, like the certificates in *Melendez-Diaz*, are "formalized testimonial materials" in that they were made "for the purpose of establishing or proving some fact." *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2532 (internal quotation marks and citation omitted). In *Melendez-Diaz*, the certificates were offered to prove that "the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine." *Id*. Likewise, in the present case, Exhibit 1 was offered to prove that Defendant had a BAC of 0.21 gms/100ml. As in *Melendez-Diaz*, Exhibit 1 was "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Id.* (internal quotation marks and citation omitted). Therefore, Exhibit 1 in the present case, like the certificates in *Melendez-Diaz*, are testimonial despite the fact that they are unsworn.

{19}     However, the Confrontation Clause permits the admission of testimonial statements "so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9 (citation omitted). Although the analyst who prepared Exhibit 1 was not present at trial, the evidence revealed that he simply transcribed the results generated by the gas chromatograph machine. He was not required to interpret the results, exercise independent judgment, or employ any particular methodology in transcribing the results from the gas chromatograph machine to the laboratory report. *Cf. Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2537-38 (stating that the methodology used in generating the reports "require[d] the exercise of judgment and present[ed] a risk of error that might be explored on cross-examination"); *State v. Aragon*, 2010-NMSC-008, ¶ 30, __ N.M. __, __ P.3d ___ (No. 31,187, February 12, 2010) (holding that "[t]he determinations of whether a substance is narcotic and its degree of purity . . . must be classified as 'opinion,' rooted in the assessment of one who has specialized knowledge and skill"). Thus, the analyst who prepared Exhibit 1 was a mere scrivener, and Defendant's true "accuser" was the gas chromatograph machine which detected the presence of alcohol in Defendant's blood, assessed Defendant's BAC, and generated a computer print-out listing its results. *See United States v. Moon*, 512 F.3d 359, 362 (7th

7

Cir. 2008) ("[T]he Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation of those data may be testimonial."); *United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007) ("The raw data generated by the diagnostic machines are the 'statements' *of the machines* themselves, not their operators."); *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005) (concluding that the computer-generated header information accompanying pornographic images retrieved from the Internet "was neither a 'statement' nor a 'declarant'"). Under these circumstances, we conclude that the live, in-court testimony of a separate qualified analyst is sufficient to fulfill a defendant's right to confrontation. *See People v. Rutterschmidt*, 98 Cal. Rptr. 3d 390, 411-12 (Cal. Ct. App. 2009), *review granted and opinion superseded by People v. Rutterschmidt*, 220 P.3d 239 (2009) (holding that the testimony of a qualified analyst who did not prepare the defendant's toxicology report was admissible under the Confrontation Clause).

**{20}** In this case, Razatos, an SLD analyst, was qualified as an expert witness with respect to the gas chromatograph machine and the SLD's laboratory procedures. Razatos provided live, in-court testimony and, thus, was available for cross-examination regarding the operation of the gas chromatograph machine, the results of Defendant's BAC test, and the SLD's established laboratory procedures. Additionally, Razatos could be questioned about whether the operation of the gas chromatograph machine required specialized skill that the operator did not possess, involved risks of operation that might influence the test results, and required the exercise of judgment or discretion, either in the performance of the test or the interpretation of the results. Because Razatos was a competent witness who provided live, in-court testimony, we conclude that the admission of Exhibit 1 did not violate the Confrontation Clause.

**{21}** We recognize that, in addition to Defendant's BAC test results, Exhibit 1 also contained information regarding chain of custody. However, in *Melendez-Diaz*, the United States Supreme Court indicated that chain of custody information may not be testimonial under the Confrontation Clause.[1] The Court stated that

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," *post*, at 2546, this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation, *ibid.*, from *United States v. Lott*, 854 F.2d 244, 250 (C.A.7 1988), "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibilty." It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects)

---

[1]We are also referring to the Committee on Rules of Criminal Procedure the task of drafting a notice-and-demand rule comparable to those seemingly noted with approval in *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2541.

8

be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

*Melendez-Diaz*, 557 U.S. at ___ n.1, 129 S. Ct. at 2532 n.1.

**{22}** In the present case, the jury heard live, in-court testimony from the officer who arrested Defendant and the nurse who drew Defendant's blood. Although Defendant had the opportunity to cross-examine these individuals regarding the chain of custody, he did not do so. Indeed, the record reflects that Defendant was willing to stipulate that the nurse "drew the blood . . . properly." To the extent that Defendant based his Confrontation Clause claim on the chain of custody information contained in Exhibit 1, it is clear that his objection was simply pro forma.

**{23}** We reiterate that the admissibility of Exhibit 1 under the Confrontation Clause was dependant on the live, in-court testimony of a qualified analyst. Clearly, had Razatos not been present to testify, Exhibit 1 would not have been admissible because Defendant would not have had the opportunity to meaningfully cross-examine a qualified witness regarding the substance of the exhibit. A defendant cannot cross-examine an exhibit. However, because Razatos did testify, Defendant's right of confrontation was preserved and the admissibility of the exhibit depends on the application of our rules of evidence.

**{24}** Rule 11-703 NMRA provides, in relevant part, that

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.* Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

(Emphasis added.); *see also Coulter v. Stewart*, 97 N.M. 616, 617, 642 P.2d 602, 603 (1982) ("While experts may rely on hearsay under Rule 703, the hearsay itself is not admissible."). Thus, Exhibit 1 properly was admitted under Rule 11-703 if it contains facts or data of the type reasonably relied upon by experts in the field and its probative value substantially outweighs its prejudicial effect.

**{25}** As previously explained, the results of the gas chromatograph machine BAC test do not constitute expert opinion, but, rather, constitute facts or data of the type reasonably relied upon by experts in the field. *Cf. Aragon*, 2010-NMSC-008, ¶ 30 (holding that an analyst could not rely on an out-of-court statement of another analyst, regarding whether a substance is narcotic and its degree of purity, because the out-of-court statement was the expert opinion of a non-testifying

9

analyst). Moreover, the trial court reasonably could have found that the probative value of Exhibit 1 in assisting the jury to evaluate Razatos's testimony substantially outweighed its prejudicial effect. Accordingly, Razatos properly relied on the gas chromatograph machine results in his testimony and the trial court did not abuse its discretion in admitting Exhibit 1 into evidence.

{26}     Although we find no error in the present case, we strongly suggest that, in future cases, the State admit into evidence the raw data produced by the gas chromatograph machine to supplement the live, in-court testimony of its forensic analyst. With the admission of this raw data, which is not subject to the constraints of the Confrontation Clause, the jury will be able to ascertain first hand the accuracy and reliability of the analyst's testimony regarding a defendant's BAC.

**B.      Whether the Trial Court Abused its Discretion by Allowing Officer Snowbarger to Offer His Opinion Testimony as to the Cause of the Accident**

{27}     The issue that Defendant raises on appeal is whether the trial court properly qualified Officer Snowbarger as an expert witness pursuant to Rule 11-702 NMRA, and, if not, whether his testimony as to the cause of the accident was properly admitted. The following facts are relevant to this claim. During trial, defense counsel objected to Officer Snowbarger offering his opinion regarding the cause of the accident because "[t]here [was] no foundation for it. He's not an expert." The trial court then requested that the State lay a foundation to qualify him as an expert. After Officer Snowbarger testified about his experience and training in traffic reconstruction, defense counsel continued to object and was overruled by the trial court. The officer then testified that his "opinion [was] that the driver of the vehicle was not paying attention to the vehicle in front of him, or his driving habits." The prosecutor followed up asking, "[W]ere you able to formulate an opinion based on your observations as to why the driver was not paying attention?" The officer responded, "Having contacted him and observed the things that I've testified to, I believe that he was under the influence of some kind of intoxicating liquor."

{28}     Whether a witness possesses the necessary expertise or a sufficient foundation has been established to permit a witness to testify as an expert witness is a matter entrusted to the sound discretion of the trial court. *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 152, 703 P.2d 925, 929 (Ct. App. 1985). Absent an abuse of discretion, a reviewing court will not disturb the trial court's decision to accept or reject such testimony. *Id*.

{29}     Rule 11-702 only requires that the proponent of the testimony demonstrate that the expert has acquired sufficient "knowledge, skill, experience, training or education" so that his testimony will aid the fact finder. To the extent that Defendant is challenging Officer Snowbarger's qualifications as an expert witness, he offers no reason why Officer Snowbarger does not have the proper qualifications to testify as an expert witness. Instead, Defendant argues that only "an expert accident reconstructionist" could offer testimony regarding the cause of the accident. At trial, Officer Snowbarger testified that, because he is in the traffic division of the police force, he has attended "a series of schools to become a traffic crash reconstructionist" and holds "certifications as a traffic crash reconstructionist." In addition, he testified that his primary duty was "to investigate

10

traffic collisions from the very minor all the way up to fatal crashes." Defense counsel did not conduct *voir dire* examination or otherwise challenge his qualifications. Therefore, we cannot say that the trial court abused its discretion in qualifying Officer Snowbarger as a expert witness. Furthermore, we note that the jury was free to weigh every aspect of Officer Snowbarger's qualifications in their evaluation of his testimony, and any perceived deficiencies in his qualifications would be "relevant to the weight accorded by the jury to [the] testimony and not to the testimony's admissibility." *State v. Torrez*, 2009-NMSC-029, ¶ 18, 146 N.M. 331, 210 P.3d 228 (internal quotation marks and citation omitted).

{30}    Defendant also challenges the admission of Officer Snowbarger as an expert witness, because the trial court failed to formally accept him as an expert. However, Defendant in his briefing before this Court fails to show what formalities are required to put the parties on notice that the trial court is accepting a witness as an expert. We reject the implication that there are formal, talismanic words that must be uttered in order to signal the court's acceptance of a witness as an expert. Instead, we determine that a witness may testify as an expert as long as the circumstances are such that the parties are on notice of the court's acceptance of that witness as an expert. In the present case, given defense counsel's objection to Officer Snowbarger's testimony on the basis that he is "not an expert," the foundation subsequently laid by the officer at the trial court's request, and the trial court's decision to overrule the defense counsel's continued objection, we conclude there was sufficient notice to the parties that the trial court was accepting Officer Snowbarger as an expert witness.

{31}    Accordingly, we conclude that the trial court properly accepted Officer Snowbarger as an expert witness and did not abuse its discretion by allowing him to offer his opinion testimony as to the cause of the accident.

## C.      Whether the Trial Court Erred in Admitting Brother's Out-of-Court Statements

{32}    The third issue that Defendant raises on appeal is whether Officer Snowbarger's testimony regarding Brother's out-of-court statements was improperly admitted because it contained impermissible hearsay and violated the Confrontation Clause. At trial, Officer Snowbarger testified that when he came in contact with Brother and questioned him about the accident and where Defendant had gone, Brother "pointed in the direction of east, [and] said that [Defendant] had been driving the vehicle." Defense counsel objected to the statement as being hearsay, but the trial court overruled the objection and instructed the jury that Officer Snowbarger's statement "[was] not for the truth . . . but to show why . . . the officer did what he did."

{33}     We first address Defendant's hearsay issue. This Court reviews the admission of hearsay for an abuse of discretion by the trial court. *State v. Salgado*, 1999-NMSC-008, ¶ 5, 126 N.M. 691, 974 P.2d 661. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Rule 11-801(C) NMRA. "An out-of-court statement is inadmissible unless it is specifically excluded as non-hearsay under Rule 11-801(D) or falls within a recognized exception in the rules

11

of evidence, or is otherwise made admissible by rule or statute." *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486 (citation omitted).

{34} The State argues that the statements were offered to show why the police officer acted as he did and not for its truth; therefore, they were properly admitted as non-hearsay. In *State v. Rosales*, 2004-NMSC-022, ¶ 16, 136 N.M. 25, 94 P.3d 768, this Court noted that "[e]xtrajudicial statements or writings may properly be received into evidence, not for the truth of the assertions therein . . . but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect on the hearer or reader, and many others." In addition, the evidence must have some proper probative effect upon or relevancy to an issue in the case in order to be admissible. Rule 11-402 NMRA; *State v. Alberts*, 80 N.M. 472, 475, 457 P.2d 991, 994 (Ct. App. 1969). Courts have been especially reluctant to allow testimony of a police officer to explain his conduct during the course of the investigation, because there is high potential for abuse by prosecution to admit highly prejudicial and otherwise inadmissible hearsay and the evidence is seldom relevant. *State v. Otto*, 2007-NMSC-012, ¶ 28, 141 N.M. 443, 157 P.3d 8 (Chavez, J., dissenting) ("In criminal cases the prosecution is fond of offering evidence of inculpatory out-of-court assertions as 'background' to explain why law enforcement agents decided to investigate a defendant. Such evidence is seldom relevant." (quoting David F. Binder, *Hearsay Handbook*, § 2:10, at 2-40 (4th ed. 2001))); *see Alberts*, 80 N.M. at 475, 457 P.2d at 994 ("The naming of defendants as persons engaged in 'illegal marijuana traffic,' for the purpose of showing why [an officer] conducted an investigation, is not a legitimate reason for admitting [hearsay] testimony."); *see also State v. Blevins*, 521 N.E.2d 1105, 1108 (Ohio Ct. App. 1987) ("[T]he potential for abuse in admitting such statements is great where the purpose is merely to explain an officer's conduct during the course of an investigation.").

{35} Despite the trial court's instruction to the jury that Officer Snowbarger's statements should not be considered for their truth, we find no other purpose for admitting these statements other than to prove that Defendant was the driver of the vehicle and headed east, as opposed to north to the creek, as he claimed in his testimony. The police officer's reason for pursuing Defendant was not a relevant issue at trial, therefore, the statements were hearsay and inadmissible.

{36} However, evidence admitted in violation of our hearsay rules is grounds for a new trial unless the error was harmless. *See State v. Downey*, 2008-NMSC-061, ¶ 39, 145 N.M. 232, 195 P.3d 1244. Where a defendant has established a violation of court rules, non-constitutional error review is appropriate, and a reviewing court should only conclude that a non-constitutional error is harmless when there is no *reasonable probability* the error affected the jury's verdict. *State v. Barr*, 2009-NMSC-024, ¶¶ 47-48, 146 N.M. 301, 210 P.3d 198.

{37} To determine whether there is a reasonable probability that a non-constitutional error contributed to a verdict, the appellate courts should consider whether there is "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony." *Id*. ¶ 56 (footnote omitted). No one factor is determinative, but all three factors when

considered in conjunction with one another "provide a reviewing court with a reliable basis for determining whether an error is harmless." *Id*. ¶ 55. In applying these factors, we must not re-weigh the evidence against a defendant, but rather determine "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id*. ¶ 57 (citation omitted). "Accordingly, in some circumstances where, in our judgment, the evidence of a defendant's guilt is sufficient even in the absence of the trial court's error, we may still be obliged to reverse the conviction if the jury's verdict appears to have been tainted by error." *State v. Macias*, 2009-NMSC-028, ¶ 38, 146 N.M. 378, 210 P.3d 804.

{38}    First, we examine whether there was substantial evidence to support the conviction without reference to the improperly admitted evidence. The jury could have reasonably relied on Mr. Jackson's testimony that immediately after the accident and before Defendant left the accident scene, Defendant had blood shot eyes and alcohol on his breath, in reaching its conclusion that Defendant was intoxicated at the time of the accident even before he left the accident scene. Additionally, a reasonable jury could have considered this testimony coupled with the testimony of the two arresting officers to conclude that Defendant was intoxicated to the slightest degree at the time of the accident. Based on the testimony of Mr. Jackson and Officer Snowbarger that Defendant was only away from the accident scene for approximately ten minutes when he was found by the officer, the jury could have reasonably concluded that this would not be enough time for Defendant to cross the street, walk around, climb over a fence, walk to the side of the creek, and drink a pint and a half-gallon of vodka, as Defendant claimed at trial.

{39}    The second factor requires us to assess the impermissible evidence in light of the permissible evidence, the disputed factual issues, and the essential elements of the crime charged. Our focus is not limited to the quantity of impermissible evidence, but, rather, encompasses the quality of that evidence and its likely impact on the jury. *See State v. Moore*, 94 N.M. 503, 505, 612 P.2d 1314, 1316 (1980) (recognizing that "a trial can be prejudiced by testimony lasting but a fraction of a second"). We conclude that the improperly admitted statements were insignificant in comparison to the permissible evidence because they did not relate to centrally disputed facts in the case. First, the parties did not dispute that Defendant was driving the vehicle at the time of the accident; therefore, Brother's statement that Defendant was driving had no impact on the jury's resolution of any disputed factual issue. Second, the fact that Brother pointed east while Defendant testified that he headed north is not inconsistent with Defendant's claim that he became intoxicated during his flight from the accident scene, especially considering that Defendant testified that he "walked around" before heading to the creek, where he encountered the men with whom he drank. Thus, this minor discrepancy, even if noticed by the jury, is not one which would have tainted their determination of Defendant's guilt.

{40}    Finally, we address the third factor, namely, whether there was substantial conflicting evidence to discredit the State's testimony. There is no conflicting evidence regarding the fact that Defendant was driving the vehicle at the time of the accident. The only conflicting evidence regarding which direction Defendant went when he fled the accident was Defendant's testimony that he went north instead of east. Considering the minimal probative value of the hearsay testimony and

13

the strength of the countervailing evidence, we conclude that the trial court's error in admitting the hearsay statements was harmless.

**{41}** We next address Defendant's Confrontation Clause claim. Generally, whether out-of-court statements are admissible under the Confrontation Clause is reviewed de novo, as a question of law. *State v. Ruiz*, 120 N.M. 534, 536, 903 P.2d 845, 847 (Ct. App. 1995), *abrogated by State v. Martinez*, 2007-NMSC-025, 141 N.M. 713, 160 P.3d 894. However, because counsel did not object under the Confrontation Clause in the trial court, this Court must review the issue under fundamental error. *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783. Defendant concedes that there was no material issue rising to the level of fundamental error with regard to Brother's statement that Defendant was driving when the accident occurred; therefore, we do not address this question. However, Defendant argues that there was a material issue concerning Brother's indication that Defendant headed east, because Defendant, to the contrary, testified at trial that he headed north, climbed over a fence, and then met the Native American men that he drank with by the creek. The Defendant claims that this statement prejudiced Defendant's case because "the direction Mr. Bullcoming walked in, where Mr. Bullcoming ended up, and how long he was gone, were critical to the jury's determination of guilty." As mentioned above, this statement had little probative value especially in light the other evidence presented by the prosecution. Thus, we conclude that there was no fundamental error, because Defendant was not prejudiced in a significant way by the admission of the statement.

## CONCLUSION

**{42}** We conclude that the blood alcohol report, prepared by an analyst who simply transcribed the results generated by a gas chromatograph machine, properly was admitted into evidence through the live, in-court testimony of a separate qualified analyst. We further conclude that, although Officer Snowbarger was never formally qualified as an expert witness, the parties understood that he was testifying as an expert witness and, thus, he could opine regarding the cause of the accident without witnessing it. Finally, though the trial court erred in admitting Brother's out-of-court hearsay statements, the error was harmless. Thus, we affirm Defendant's conviction.

**{43}** **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

14

_____
**PATRICIO M. SERNA, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Bullcoming*, No. 31,186**

| | |
|---|---|
| **AE** | **Appeal and Error** |
| AE-FE | Fundamental Error |
| AE-HE | Harmless Error |
| | |
| **CT** | **Constitutional Law** |
| CT-RF | Right to Confrontation |
| | |
| **CL** | **Criminal Law** |
| CL-DG | Driving While Intoxicated |
| | |
| **EV** | **Evidence** |
| EV-AE | Admissibility of Evidence |
| EV-BT | Blood/Breath Tests |
| EV-EW | Expert Witness |
| EV-HR | Hearsay |