This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                      **No. 28,812**

**BERTHA GARCIA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Frank K. Wilson, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant was convicted of one count of fraud, multiple counts of embezzlement, and multiple counts of conspiracy to commit a felony. Defendant appeals, raising four claims of error. As we agree with Defendant and the State that the jury did not find Defendant guilty of fraud over $2500, we reverse that conviction and remand so that the judgment and sentence can be corrected to reflect Defendant's conviction of fraud over $250. As Defendant's other claims are without merit, we affirm Defendant's remaining convictions.

**BACKGROUND**

Defendant was a long-time, trusted employee at EZ-TV & Appliance, where she served as the company's head bookkeeper. Beginning in 2002 and continuing through 2006, Defendant issued a number of credits from EZ-TV's bank account to credit and debit cards controlled by Defendant and Defendant's friend and co-conspirator Lea Ann Hathorn. These credits were disguised to appear as if someone had purchased something from the store, and then returned it, but, in fact, no purchases or returns were made that would warrant the credits.

Based on this activity, the State charged Defendant with thirty-five counts of embezzlement over $250, contrary to NMSA 1978, Section 30-16-8 (1995) (amended 2006 and 2007) or, in the alternative, fraud over $250, contrary to NMSA 1978, Section 30-16-6 (1987) (amended 2006); eleven counts of embezzlement over $2500

or, in the alternative, fraud over $2500; and forty-six counts of conspiracy to commit a felony contrary to NMSA 1978, Section 30-28-2 (1979). After a jury trial, a judgment and sentence was entered in which Defendant was convicted of one count of fraud over $2500, eleven counts of embezzlement over $2500, thirty-four counts of embezzlement over $250, and forty counts of conspiracy. Defendant appeals.

**DISCUSSION**

**The Clerical Error in the Judgment and Sentence**

Defendant asserts, and the State concedes, that there is a clerical error in the judgment and sentence. The judgment states that Defendant was convicted on Count 1 for fraud over $2500, a third-degree felony. However, Count 1 of the grand jury indictment charged Defendant with fraud over $250, a fourth-degree felony. At trial, the jury found Defendant guilty of fraud of $1,089.03, as charged in Count 1. As Defendant's conviction of fraud of over $2500 is not supported by the record, we reverse that conviction and remand for correction of the judgment and sentence to reflect Defendant's conviction for fraud over $250.

**The Introduction of Business Records Into Evidence**

Defendant contends that her Sixth Amendment right to confront the witnesses against her was violated when the State introduced a number of bank documents at trial and did not call the people who created the documents as witnesses. We review

de novo Defendant's claim under the Sixth Amendment's Confrontation Clause. *See State v. Bullcoming*, 2010-NMSC-007, ¶ 41, 147 N.M. 487, 226 P.3d 1.

Under the Confrontation Clause, "testimonial hearsay is barred . . . unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280. If evidence is not "testimonial," it raises no Sixth Amendment issue because "only testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause." *Id.* (internal quotation marks and citation omitted). Records that are prepared in the regular course of business for the use of the business, and not prepared specifically for trial, are generally not testimonial and therefore may be introduced without giving rise to any Sixth Amendment protections. *See id.* ¶ 18. Because Defendant does not dispute that the bank records introduced in this case were prepared in the ordinary course of the banks' business, they were not testimonial, and their introduction did not violate Defendant's right to confront the witnesses against her. Defendant's citation to *State v. Austin*, 104 N.M. 573, 725 P.2d 252 (Ct. App. 1985), which she acknowledges was decided under a Confrontation Clause analysis that has since been rejected, is not persuasive.

We note that the business records were authenticated by an appropriate records custodian as required by Rules 11-803(F) and 11-902(K) NMRA, and that the

custodians' certifications appear to be hearsay statements made in preparation for trial. However, to the degree that Defendant's brief can be read to challenge the introduction of the certifications, as opposed to the business records themselves, we decline to address this argument because Defendant failed to preserve it in the district court and does not assert that the introduction of the certifications constituted fundamental error. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (reviewing a defendant's Confrontation Clause argument only for fundamental error when the defendant failed to preserve the issue in the district court).

Furthermore, even if the admission of these certifications was erroneous, it appears that Defendant invited the error. At the hearing on the State's pretrial motion for a ruling on the sufficiency of these certifications, Defendant specifically said that the authentication of the certifications was sufficient such that the district court could enter an order stating that the records custodians did not have to appear for trial. The district court was entitled to rely on Defendant's concession that the live testimony of the records custodians was unnecessary. *See State v. Handa*, 120 N.M. 38, 45-46, 897 P.2d 225, 232-33 (Ct. App. 1995) (stating that a defendant is not entitled to relief on appeal for errors, even fundamental errors, that he invited).

**Multiple Conspiracy Convictions**

Defendant asserts that her forty conspiracy convictions violate her right to be free from double jeopardy because she believes the evidence indicates that there was a single agreement to commit multiple criminal acts, rather than multiple agreements to commit individual criminal acts. Because Defendant is challenging her multiple convictions for conspiracy, this is a "unit of prosecution" case. *See State v. Turner*, 2007-NMCA-105, ¶ 10, 142 N.M. 460, 166 P.3d 1114. In a unit-of-prosecution case dealing with multiple conspiracies, "the number of agreements to break the law determines the number of criminal conspiracies subject to prosecution." *Id.* ¶ 11 (internal quotation marks and citation omitted). Therefore, "where there is one agreement to commit two or more criminal acts, the perpetrators are guilty of a single conspiracy." *Id.* (alteration omitted) (internal quotation marks and citation omitted). Generally, we review a double jeopardy claim de novo. *See id.* ¶ 9. However, our Supreme Court's precedents indicate that the specific question of the number of conspiracies for double jeopardy purposes is reviewed for the sufficiency of the evidence. *See State v. Reyes*, 2002-NMSC-024, ¶¶ 19-20, 132 N.M. 576, 52 P.3d 948 (stating that the defendant argued that multiple conspiracy convictions violated double jeopardy and that the issue of the number of conspiracies would be reviewed under a sufficiency of the evidence standard); *State v. Martinez-Rodriguez*, 2001-NMSC-029,

¶ 39, 131 N.M. 47, 33 P.3d 267 (same), *abrogation on other grounds recognized in State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144. Under this standard, we "view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in support of the jury's verdict." *Reyes*, 2002-NMSC-024, ¶ 20 (internal quotation marks and citation omitted).

Defendant, relying on *State v. Jackson*, 116 N.M. 130, 860 P.2d 772 (Ct. App. 1993), argues that there is an open question in New Mexico law about the appropriate analysis for determining the number of conspiracies—one analysis focusing on the number of agreements and the other on the existence of a continuous conspiratorial relationship. We note that the statement in *Jackson* about the continuous conspiratorial relationship analysis was based on a special concurrence in a prior case, *see* 116 N.M. at 133, 860 P.2d at 775, and to the degree there was an open question about the appropriate standard at the time *Jackson* was decided, since then, our courts have focused solely on the number of conspiracies. *See, e.g.*, *Reyes*, 2002-NMSC-024, ¶ 20 (stating that it is "the number of agreements to break the law [that] determines the number of criminal conspiracies subject to prosecution" (internal quotation marks and citation omitted)); *State v. Sanders*, 117 N.M. 452, 457, 872 P.2d 870, 875 (1994) (same); *Turner*, 2007-NMCA-105, ¶ 11 (same); *State v. Armijo*, 2005-NMCA-010, ¶ 12, 136 N.M. 723, 104 P.3d 1114 (filed 2004) (holding that

8

because there was only one agreement, there can only be one conviction). Accordingly, we limit our analysis to the question of whether there was sufficient evidence to support a conclusion that Defendant entered into forty separate agreements to commit a felony.

Although the existence of an agreement is sometimes proved by direct evidence of the agreement itself, *see, e.g.*, *Sanders*, 117 N.M. at 457-58, 872 P.2d at 875-76, it is more often inferred from the facts and circumstances in a case, *see Reyes*, 2002-NMSC-024, ¶ 20. In *Reyes*, our Supreme Court found sufficient circumstantial evidence to establish the existence of three separate agreements: the first, to commit armed robbery; the second, to commit three murders; and the third, to commit an act of kidnapping, based on the differing treatment of the victims and the distinct timing of the acts. 2002-NMSC-024, ¶¶ 24-25. This Court has found sufficient circumstantial evidence of five separate conspiracies to commit burglary during an eleven-day period when the burglaries took place days apart and were of different houses, such that a jury could reasonably infer that the conspirators "did not agree in advance to commit five burglaries of five particular residences and businesses on certain days." *See State v. Tisthammer*, 1998-NMCA-115, ¶¶ 27-28, 126 N.M. 52, 966 P.2d 760. This Court has found sufficient circumstantial evidence of two separate conspiracies to sell illegal drugs when there was a separation of four days between the

two sales, the sales took place at different locations, and the two transactions involved sales at different prices. *See State v. Hernandez*, 104 N.M. 268, 277-78, 720 P.2d 303, 312-13 (Ct. App. 1986).

Here, there was significant circumstantial evidence to establish that Defendant entered into forty separate agreements to commit individual criminal acts. The forty different transfers of funds giving rise to the conspiracy charges occurred over a span of more than three years. With the exception of Counts 54 and 55, each transaction was on a different date—some were months apart—and each involved a distinct amount of money. The transfers from EZ-TV's account went to a number of different credit and debit cards. As in *Tisthammer* and *Hernandez*, a rational jury could infer that Defendant and her co-conspirator did not enter into a single agreement to make these specific transactions on these specific dates and in these specific amounts, but rather, reached each agreement separately.

Furthermore, in addition to this circumstantial evidence, there was direct evidence of multiple, separate agreements. Defendant testified that Ms. Hathorn would call her to ask her to make credits from EZ-TV's accounts to Ms. Hathorn's accounts. Defendant stated that she initially agreed to make these transfers because Ms. Hathorn claimed she would pay EZ-TV back. When Defendant realized that Ms. Hathorn was not paying the money back, she told Ms. Hathorn that she would not

10

make the transfers anymore. Defendant testified that she nevertheless continued to make transfers, because Ms. Hathorn would repeatedly call her and threaten to turn her in to her employers if she did not. She testified that when Ms. Hathorn called, Ms. Hathorn requested specific transfers in specific amounts, and that Defendant agreed to make the transfers. This testimony provided direct evidence that Defendant entered into multiple different agreements in response to Ms. Hathorn's requests and demands. Although there was not direct evidence of each of the forty agreements, this direct evidence regarding at least some of the agreements supported the circumstantial evidence of separate agreements.

Because there was sufficient direct and circumstantial evidence from which a reasonable juror could conclude that Defendant entered into forty separate agreements to commit the illegal transfers of funds, these separate convictions did not violate Defendant's right to be free from double jeopardy.

**Defendant's Sentence**

Based on her eighty-six convictions, Defendant was sentenced to 147 years imprisonment. The district court suspended 130 years, so that Defendant's total period of incarceration would be seventeen years. Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant contends that the district court erred in sentencing her and in

11

denying her motion to reduce her sentence. We review the district court's sentencing decision for an abuse of discretion. *See State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491. "Judicial discretion is abused if the action taken by the trial court is arbitrary or capricious. . . . Such abuse of discretion will not be presumed; it must be affirmatively established." *Id.* (omission in original) (internal quotation marks and citation omitted).

Defendant contends that her sentence was disproportionate, and therefore constituted cruel and unusual punishment, because she received seventeen years incarceration, while Ms. Hathorn received only ten. In general, a lawful sentence does not constitute cruel and unusual punishment. *See State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct. App. 1981). There is no indication that Defendant's sentence was unlawful, and in fact, the seventeen years' imprisonment to which Defendant was sentenced was much less than the 147 years that the district court was authorized to impose under the relevant statutes. "It is the Legislature's province to set penalties for crimes and only in exceptional circumstances will the court invade this province." *State v. Rueda*, 1999-NMCA-033, ¶ 16, 126 N.M. 738, 975 P.2d 351 (filed 1998). Defendant has not cited any cases or other authority indicating that a seventeen-year sentence is unconstitutional under the circumstances, and we do not find Defendant's sentence to be one of those exceptional cases that are so shocking

or so unfair as to constitute cruel and unusual punishment. Although Defendant believes she was less culpable than Ms. Hathorn, the district court was not required to take this view, particularly where Defendant was the member of the conspiracy who actually made all of the illegal transfers. The seventeen-year sentence the district court imposed was not cruel and unusual.

Furthermore, nothing in the record indicates that this sentence was a punishment imposed for Defendant's choice to exercise her right to a jury trial. *Cf. Bonilla*, 2000-NMSC-037, ¶¶ 8, 15 (holding that the defendant was improperly punished for his exercise of his right to a trial by jury, based on evidence in the record that the district court had a policy of imposing the full sentence when a defendant chose to go to trial). Although Defendant argues that the State revoked its plea offer prior to trial, Defendant does not explain how this action by the State is related to the particular sentence imposed by the district court. Accordingly, we hold that no error exists.

Defendant suggests that the district court's denial of a hearing on her motion for a reduction of her sentence denied Defendant the opportunity to fully present her reasons why her sentence should be reduced. Defendant cites no authority to support her argument that she was entitled to a hearing under the circumstances or that she was prejudiced by the lack of one. Accordingly, we assume that there is no such

13

authority, and we decline to reverse on this basis. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Defendant already had the opportunity to present any evidence and argument regarding her sentence at her sentencing hearing, and we know of no reason why the district court could not properly deny Defendant's motion to reduce her sentence on the basis of her written argument alone.

**CONCLUSION**

For the reasons stated in this opinion, we reverse Defendant's conviction on Count 1 for fraud over $2500 and remand for correction of the judgment and sentence to reflect that Defendant was convicted under that count of fraud over $250. We affirm Defendant's remaining convictions.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**

14