IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-008

Filing Date: December 9, 2009

Docket No. 29,033

KARIN FRENCH-HESCH,

 Petitioner-Appellant,

v.

KEALY FRENCH-WILLIAMS,

 Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Stephen P. Eaton
Albuquerque, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}** The district court ruled that a maternal grandmother lacked standing under the Grandparent Visitation Privileges Act, NMSA 1978, §§ 40-9-1 to -4 (1993, as amended through 1999) (the Act), to seek reasonable visitation with her grandson. Grandmother appeals. We reverse and remand for further proceedings.

## BACKGROUND

**{2}**     Pursuant to the Act, Karin French-Hesch (Grandmother), Jerry Hesch, and Curtis McMurtrey filed a petition in district court in October 2007 naming Kealy French-Williams (Mother) as Respondent requesting visitation with Deveron French (Child), Grandmother's grandson, who was born in March 1996.  Messrs. Hesch and McMurtrey were soon dismissed as parties and are not involved in this appeal.  Mother answered, asserting that Grandmother could not meet threshold requirements for visitation under Section 40-9-2(C) of the Act.  The district court held an evidentiary hearing to determine whether a factual basis exists for the court to exercise jurisdiction under the Act.  The court addressed the interpretation and application of Subsections (C) and (G) of Section 40-9-2.  These subsections read as follows:

> C.     If a minor child resided with a grandparent for a period of at least three months and the child was less than six years of age at the beginning of the three-month period and the child was subsequently removed from the grandparent's home by the child's parent or any other person, the grandparent may petition the district court for visitation privileges with respect to the child[.]
>
> . . . .
>
> G.     When considering a grandparent's petition for visitation privileges with a child, the district court shall assess:
>
>> (1)     any factors relevant to the best interests of the child;
>>
>> (2)     the prior interaction between the grandparent and the child;
>>
>> (3)     the prior interaction between the grandparent and each parent of the child;
>>
>> (4)     the present relationship between the grandparent and each parent of the child;
>>
>> (5)     time-sharing or visitation arrangements that were in place prior to the filing of the petition;
>>
>> (6)     the effect the visitation with the grandparent will have on the child;
>>
>> (7)     if the grandparent has any prior convictions for physical, emotional or sexual abuse or neglect; and

2

(8)    if the grandparent has previously been a full-time caretaker for the child for a significant period.

Section 40-9-2(C), (G). The district court ruled that Grandmother lacked standing under the Act and dismissed her petition.

## DISCUSSION

**{3}**    The parties agree that under the Act Grandmother must meet the threshold requirement of standing under Subsection (C) before the court can proceed on the merits of the visitation petition under Subsection (G). *See Ridenour v. Ridenour*, 120 N.M. 352, 354, 356, 901 P.2d 770, 772, 774 (Ct. App. 1995) (stating that once one of the threshold requirements set out in Section 40-9-2(A) to (F) is met, the district court is to assess the factors in Section 40-9-2(G) and that "visitation is appropriate only after grandparents have met one of the threshold factors").

### Standard of Review

**{4}**    We review a district court's findings for substantial evidence and resolve all disputes of facts and indulge all reasonable inferences in support of the prevailing party. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996). We review conclusions of law de novo and we may draw our own conclusions of law. *Edmonds v. Martinez*, 2009-NMCA-072, ¶ 8, 146 N.M. 753, 215 P.3d 62, *cert. denied*, 2009-NMCERT-006, 146 N.M. 733, 215 P.3d 42; *Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). The interpretation of statutes is a question of law that we review de novo. *Jacobo v. City of Albuquerque*, 2005-NMCA-105, ¶ 4, 138 N.M. 184, 118 P.3d 189.

### The District Court's Determinations

**{5}**    The court entered findings of fact and ruled that Grandmother did not have standing. The district court's findings were as follows. Child was born in March 1996, Mother is his biological mother, and Grandmother is his maternal grandmother. Grandmother was at the hospital at the time of Child's birth, and she testified that someone approached her and identified herself as a social worker. Child's grandfather testified that a woman who identified herself as a nurse, doctor, or social worker indicated there were three possible options concerning Child: (1) the grandparents could take Child without Mother; (2) the grandparents could take Child and Mother; or (3) the "state" would take Child. Mother never spoke directly to the woman, but was told by the grandparents of the choices described by the woman. Mother was not given the option of leaving the hospital with Child. No evidence was presented to the court to explain or justify why Mother was not given that option other than a statement that Mother needed better living conditions. Upon release, Mother and Child lived with the grandparents, during which time Mother was the primary care giver of Child and grandparents provided the "roof over their heads." Mother lived in

3

Grandmother's home with Child as a result of Grandmother's ultimatum shortly after Child was born.

**{6}** The district court made the following additional findings. Child resided with Mother in Grandmother's home from the time of his birth until September 1998. In September 1998, a domestic disturbance between Mother and Grandmother led to Mother leaving Grandmother's home without Child. The testimony was disputed regarding when Child was returned to Mother, and there was insufficient evidence to find that Child lived with Grandmother for three months from September 1998 to December 1998. Under the circumstances of the case, Grandmother lacked standing under the Act to pursue visitation privileges.

**{7}** The sole issue for us on appeal is whether the district court erred in denying Grandmother standing. The sole standing requirement with which we are concerned is that of a three-month residence. The issue of removal was not covered in the district court's findings, and it is not a ground argued on appeal.

### Grandmother's Arguments on Appeal

**{8}** On appeal, Grandmother argues that reversal is required simply because the court found that Child had resided with Grandmother for more than three months when he was less than six years old. In addition, Grandmother argues that the district court improperly went beyond the elements of Section 40-9-2(C) by considering such matters as Grandmother's conduct, Mother's lack of choice, who Child's primary caregiver was, and the factors in Section 40-9-2(G). *See Amerada Hess Corp. v. Adee*, 106 N.M. 422, 424, 744 P.2d 550, 552 (Ct. App. 1987) (stating that a court cannot "add a requirement which is not provided for in the statute"). Grandmother also argues that, having done so, the district court also violated principles of statutory construction, namely, that the words in a statute are to be given their ordinary meaning and that the plain language and a literal reading of Subsection (C) shows that the court is strictly limited to an inquiry as to whether Child resided for at least three months in Grandmother's home before age six.

### Mother's Arguments on Appeal

**{9}** In her attempt to pinpoint on which question the case should turn, Mother appears to focus substantially on the nine-year interval from the point Mother and Child left Grandmother's home to the point Grandmother decided to seek visitation rights in court, on lack of any Grandmother-Child relationship, and on lack of a good relationship between Grandmother and Mother. Mother sees Grandmother's petition as little more than her effort to use the legal system to create a legal relationship of love and a bond with Child that did not exist or no longer exists. Mother also indicates that this Court is being asked to consider a clash of interests under the Act, and she suggests that we consider whether the district court can indulge in "overriding equitable considerations in applying a statutory analysis."

4

**{10}** In addition, Mother argues that the district court's decision is in conformity with the purposes and intent of the Act and with "the procedure by which the [Act] may be given force in the best interest of children and families." Mother describes the purpose of the Act as being to continue existing relationships between a child and a grandparent where the child could be harmed by discontinuing that relationship. She also states that the statute is to be used as a protective shield in favor of grandparents and their grandchildren, and not as Grandmother intends, which Mother describes as a dividing sword to allow a disgruntled grandparent to establish a relationship after years of lack of contact with the child. Mother further frames the question as not whether a young woman voluntarily sought shelter with her extended family and thereby obligated herself under the statute, but instead "whether, on the facts of this case, the roof provided ten years ago confers standing now."

**{11}** Mother concedes that the court considered "certain factors related to the best interests of [Child]" and argues that the district court had the authority under the statute to exercise its reserve of equitable powers in domestic matters: to address intimate family relationships; to consider the best interests of Child, the extent of any caretaker role on Grandmother's part, and Grandmother's conduct and motivations; and to give consideration of relevant facts beyond the enumerated Subsection (C) factors, including evaluating the facts under Subsection (G) in deciding the issue of residence.

**Analysis of Issues**

**{12}** We read Subsections (C) and (G) of Section 40-9-2 to be separate, distinct provisions that require separate proof. Subsection (C) opens the door for a grandparent to seek visitation privileges under the Act upon threshold showings of residence and removal. Once the Subsection (C) door is opened, Subsection (G) discusses various factors the district court is to assess when considering the merits of a grandparent's petition seeking visitation privileges.

**{13}** In regard to Subsection (C), the requirement is that the "minor child resided with a grandparent for a period of at least three months and the child was less than six years of age at the beginning of the three-month period." Section 40-9-2(C). There are no definitions, conditions, or exceptions in the Act in regard to that residence requirement. We cannot agree with Mother's request that the district court be permitted to indulge in overriding equitable considerations in applying a statutory analysis. Neither Subsection (C), nor any other provision in the Act, nor *Ridenour*, permits a court to assess the residency requirement by considering the factors in Subsection (G) or any evidence outside of the temporal residential and age factors set out in the subsection. Nor do we see a basis under the facts in the present case on which the court was permitted to resort to any reserve of equitable powers in evaluating Child's residency with Grandmother to determine standing.

**{14}** We understand that the district court did not think the Act should be read to saddle Mother and Child with a grandparent visitation privilege where Mother was coerced at Child's birth into the circumstance in which she had no reasonable choice but to live with

5

Child in Grandmother's home. Along that line, as well, Mother argues that it would be absurd to permit a grandparent who obtained standing by threat or duress to force a parent into protracted and expensive litigation over the child's best interests. There may be instances in which standing granted under threshold statutory requirements may be denied when the party relies on his own wrongful conduct to maintain an action. *See Kaiser v. Thomson*, 55 N.M. 270, 274, 232 P.2d 142, 144 (1951) ("It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws." (internal quotation marks and citation omitted)); *see also Horjales v. Loeb*, 291 So. 2d 92, 93 (Fla. Dist. Ct. App. 1974) (holding that the circuit court had a right to dismiss the plaintiff's case on the theory that "[o]ne who engages in a fraudulent scheme forfeits all right to the prosecution of a [lawsuit]"); *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484-85 (Miss. 2006) (denying the plaintiff the right to sue, based on the policy and principle that "[n]o [c]ourt will lend its aid to a [party] who founds his cause of action upon an immoral or an illegal act" and stating that the plaintiff's "entire claim is wholly rooted in his own transgressions taking place at the time his alleged injury occurred" (first alteration in original) (internal quotation marks and citation omitted)); *Hines v. Sullivan*, 431 N.Y.S.2d 868, 869 (N.Y. Fam. Ct. 1980) (denying a putative father the right to sue under the common law maxim that "a person cannot maintain a cause of action if, in order to establish it, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party" (internal quotation marks and citation omitted)). However, because of the unique structure of the Act and the circumstances in this particular case, we are unwilling to permit an attack on Grandmother's standing based on the view that Mother was coerced by threat or duress to live with Child in the Grandmother's home.

{15}   The Act is unique in setting out relatively minimal statutory requirements for standing to seek grandparent visitation privileges, while at the same time granting discretion in the district court to grant or deny visitation after considering various circumstances. It seems clear that any inequitable or wrongful conduct on the part of a grandparent can, and presumably will, be dealt with by the district court in determining whether the grandparent should be granted visitation privileges. We can envision circumstances, and those in the present case may well fit within such circumstances, in which a grandparent's inequitable or wrongful conduct may not be sufficient in the district court's mind to preclude some visitation privilege. Transferring consideration of the conduct from the issue of standing to that of visitation privilege is, in our view, the better way to deal with the issue. *See In re Custody of C.C.R.S.*, 872 P.2d 1337, 1342 (Colo. Ct. App. 1993) ("[W]e are unpersuaded by the argument that a liberalized view of non-parent standing to commence custody actions will serve to reward persons who obtain physical custody over children by criminal, fraudulent, or other forms of misconduct. . . . We believe it unlikely that a trial court would find it in a child's best interest to award custody to a person who had obtained physical custody by kidnapping, fraud, or other overreaching conduct."), *aff'd*, 892 P.2d 246 (Colo. 1995). Furthermore, we are hard pressed to believe, and we see no evidence in the record to show or any finding of fact to indicate that Mother was in any way forced through threat

6

or duress to continue to reside in Grandmother's home with Child for the two-year period Mother and Child resided there.

**{16}** Nor are we able to affirm the district court's ruling insofar as it may have been based on a finding that Mother was the caregiver, with the implicit finding that Grandmother was not a caregiver or the primary caregiver. We see nothing in Subsection (C) that permits the court to deny standing based on who the primary caregiver is when a parent and child are living in a grandparent's home. Caregiving, as between parent and grandparent, is a factor outside of temporal residential, age, and removal considerations. We do not see it as a factor to be considered on the issue of standing.

**CONCLUSION**

**{17}** We hold that the district court erred in holding that Grandmother lacked standing to seek visitation privileges, and we remand to the district court for further proceedings.

**{18}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for** _French-Hesch v. French-Williams_**, No. 29,033**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SD | Standing |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-GR | Grandparents |
| DR-VR | Visitation Rights |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |

ST-RC     Rules of Construction