This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                **NO. 30,242**

**DEANNA LUJAN,**

    Defendant-Appellee,

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellant Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

    The State appeals the district court's order excluding evidence and dismissing a case against Defendant Deanna Lujan, pursuant to NMSA 1978, § 39-3-3(B)(2)

(1972). We issued a calendar notice proposing to reverse the district court's order. Defendant filed a memorandum in opposition, which we have duly considered. Remaining unpersuaded, we reverse.

**DISCUSSION**

The district court granted Defendant's motion to exclude evidence because the State's expert witness was not the analyst who performed the blood tests in Defendant's case. [RP 130] Relying on *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), the district court ruled that the blood test results were not admissible unless the analyst who performed the tests was available for cross-examination. [RP 130]

The New Mexico Supreme Court recently decided two cases relevant to this appeal. *See State v. Aragon*, 2010-NMSC-008, 147 N.M. 474, 225 P.3d 1280; *State v. Bullcoming*, 2010-NMSC-007, 147 N.M. 487, 226 P.3d 1. In *Aragon* and *Bullcoming*, the Court held that crime laboratory reports are testimonial for purposes of the Confrontation Clause of the Sixth Amendment. *See Aragon*, 2010-NMSC-008, ¶ 20; *Bullcoming*, 2010-NMSC-007, ¶ 18. The Court then turned to whether a defendant's right to confrontation is violated when the State admits the reports through the testimony of an analyst who did not perform the analysis. In *Bullcoming*, the Court held that a qualified analyst who did not prepare the gas chromatograph

analysis of the defendant's blood sample could testify in that case about the testing analyst's results without violating a defendant's right to confrontation. *See* 2010-NMSC-007, ¶ 19 (noting that the analyst simply transcribed the results generated by the gas chromatograph machine and the use of raw data produced by scientific instruments does not offend the Confrontation Clause). In contrast, in *Aragon*, the Court held that the testing analyst must testify in order to admit a forensic report of a narcotic substance because determinations of whether a substance is a narcotic and its degree of purity constitute opinions that require specialized knowledge and skill. *See* 2010-NMSC-008, ¶ 30. However, both cases hold that under some circumstances a substitute analyst may proffer his or her own opinion based upon the underlying data under Rule 11-703 NMRA. *See Aragon*, 2010-NMSC-008, ¶ 33; *Bullcoming*, 2010-NMSC-007, ¶ 24.

Based on the holdings in *Bullcoming* and *Aragon*, our calendar notice proposed to reverse the district court's ruling and remand for further proceedings. [CN 5] As we discussed, the circumstances in this case appear to be similar to those in *Bullcoming*. [CN 3-5] As in *Bullcoming*, the blood tests at issue here involve gas chromatograph analysis of a blood sample. [RP 101; DS 3-4] The State sought to introduce the test results and have an expert witness, Dr. Rong-Jen Hwang, testify about the blood test results and the SLD's methods and procedures. [DS 3-4; RP 106]

3

Dr. Hwang, the chief of the toxicology bureau, did not prepare the toxicology report that resulted in the finding of several substances in Defendant's blood, but reviewed and signed it. [DS 3] *Bullcoming* held that even though the analyst who prepared the blood test results was not present to testify, the testing analyst was a mere scrivener who was not required to interpret the results. *See Bullcoming*, 2010-NMSC-007, ¶ 19. Thus, a qualified expert witness who did not prepare the toxicology report might properly testify about the results without violating the defendant's right to confrontation. *Id.* Under such circumstances, because a qualified expert provided live, in-court testimony and was available for cross-examination, the defendant's blood test results could be admitted. *Id.* ¶ 20. In this case, if the proper foundation is laid under *Bullcoming* and *Aragon* for Dr. Hwang to testify, then the district court may have erred in excluding his testimony and the toxicology report based on the Confrontation Clause. [CN 4-5] Based on *Bullcoming*, we therefore proposed to hold that the district court may have erred in excluding the blood test results and not allowing Dr. Hwang to testify. [CN 5]

To the extent that the toxicology reports at issue may have required more interpretation, our calendar notice also questioned whether the district court erred in making a general ruling that the expert witness could not testify. [CN 5-6] Under *Aragon*, an expert witness who does not perform the tests of a narcotic substance

4

cannot testify about the toxicology report if he or she is simply restating the testifying analyst's opinion regarding the content, weight, and purity of a narcotic substance. *See* 2010-NMCA-008, ¶¶ 29-30. Doing so would preclude cross-examination and violate the Confrontation Clause. *See id.* However, an expert witness can rely on his or her own analysis of the underlying facts and data that contributed to the testing analyst's opinion to arrive at an independent conclusion. *Id.* In addition, if an expert expresses such opinion based on the underlying data, the data itself may be admissible under Rule 11-703 if it is the type of data reasonably relied upon by chemical forensic experts in forming opinions and its probative value outweighed its prejudicial effect. *Id.* ¶ 33. In this case, the district court's ruling does not indicate that the court determined that Dr. Hwang only intended to repeat the testing analyst's results. We therefore proposed to hold that the district court erred in making a broad ruling that the State's expert witness could not testify. [CN 5-6]

Here, the record indicates that the district court made a general ruling that Defendant's confrontation rights would be violated because the State's expert witness was not the blood analyst on Defendant's case. Although Defendant maintains that the district court properly excluded the evidence under *Melendez-Diaz*, [MIO 6-7] we remain persuaded based on *Bullcoming* and *Aragon* that the district court's ruling may not have comported with the analysis required by our Supreme Court. In order to

determine whether the evidence is admissible, the district court must make additional findings consistent with *Bullcoming* and *Aragon*.

**CONCLUSION**

We therefore reverse the district court's order and remand this case for further proceedings.

**IT IS SO ORDERED.**

 

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**RODERICK T. KENNEDY, Judge**