The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **<u>September 11, 2024</u>**

**No. A-1-CA-40864**

**CORINNE R. FLORES,**

Petitioner-Appellant,

v.

**KERRI MCLAIN and PATRICK FLORES,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary W. Rosner, District Court Judge**

McBryde Law LLC
Deian McBryde
Albuquerque, NM

L. Helen Bennett, PC
L. Helen Bennett
Albuquerque, NM

for Appellant

Camuñez Law Firm, P.C.
Roseanne Camuñez
Las Cruces, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

for Appellee Kerri McLain

Patrick Flores
Silver City, NM

Pro Se Appellee

**OPINION**

**WRAY, Judge.**

{1}     Corrine Flores (Grandmother) petitioned for visitation privileges with her granddaughter (Child) under the Grandparent's Visitation Privileges Act (the GVPA), NMSA 1978, §§ 40-9-1 to -4 (1993, as amended through 1999). While the GVPA proceeding was pending, a no-contact order (the original no-contact order) that had been issued in a separate proceeding under the Kinship Guardianship Act (the KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001, as amended through 2023), was clarified to prohibit contact between Grandmother and Child (the revised no-contact order). The district court determined that the revised no-contact order precluded the GVPA petition as a matter of law. Grandmother appeals. We hold that the revised no-contact order was a binding but modifiable order entered in a family proceeding in which the district court had ongoing jurisdiction. As such, the revised no-contact order had a qualified preclusive effect and could be modified on a showing of changed circumstances. *See Cherpelis v. Cherpelis*, 1996-NMCA-037, ¶ 18, 121 N.M. 500, 914 P.2d 637. The district court in the present case had jurisdiction to consider both Grandmother's legally sufficient petition for visitation and the evidence regarding modification of the revised no-contact order but instead dismissed the GVPA petition as precluded as a matter of law. As we explain, we reverse and remand.

## BACKGROUND

{2}    Kerri McLain (Mother) gave birth to Child in June 2016. Grandmother petitioned in February 2018 to be appointed a kinship guardian under the KGA. The GVPA proceeding before us is rooted in the KGA proceeding, and so we begin our review with the few undisputed facts in the GVPA record that sketch the outline of the KGA proceeding.[1]

{3}    The district court designated Grandmother as Child's kinship guardian in October 2018. In December 2019, the district court appointed a guardian ad litem (GAL), who filed a motion to terminate the kinship guardianship in May 2020. The district court granted the motion and terminated the kinship guardianship on May

[1]Grandmother bore the burden as the party bringing the appeal "to bring up a record sufficient for review of the issues . . .she raises on appeal." *See Sedillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-002, ¶ 21, 140 N.M. 858, 149 P.3d 955 (internal quotation marks and citation omitted). The parties appear to agree that this Court may take judicial notice to some degree of the documents filed in the KGA proceeding, but disagree as to the extent of any such notice. Mindful that judicial notice of other judicial proceedings is not the general rule, we decline to apply any exception to this general rule to documents or facts that the parties have not designated as part of the record. *See State v. Garcia*, 2023-NMCA-010, ¶ 26, 523 P.3d 650, *cert. quashed* (S-1-SC-39668, March 4, 2024); *see also* Rule 11-201(B)(1), (2) NMRA (permitting judicial notice of adjudicative facts that are "generally known," the accuracy of which can be "readily determined from sources whose accuracy cannot reasonably be questioned"). Should the factual record be deficient, "we will indulge in every presumption in support of the correctness of the [district] court's decision." *Sedillo*, 2007-NMCA-002, ¶ 21 (internal quotation marks and citation omitted).

2

29, 2020. Subsequently, in February 2021 the district court entered the original no-contact order, which included the following language:

> The [c]ourt adopts the GAL recommendations to include a no contact order as follows:
>
> a. [Grandmother] is not allowed to contact [Mother], or be near [Mother's] home.
>
> b. None of [Grandmother's] family are allowed to contact [Mother].

{4} In July 2021, a few months after the original no-contact order was entered and a little more than a year after the kinship guardianship was terminated, Grandmother filed the GVPA petition that is currently before us. The GVPA petition referenced the temporary KGA appointment but not the original no-contact order. Mother filed a counterclaim and pleaded that Grandmother and her family were "currently prohibited from contacting [Mother] by virtue of a [c]ourt [o]rder filed on February 21, 2021 in [the KGA proceeding]." In January 2022, Mother filed a motion, in relevant part, to dismiss Grandmother's GVPA petition based on the existence of the original no-contact order. In response, Grandmother argued that the original no-contact order did not prevent contact between Grandmother and Child.

{5} Mother returned to the KGA proceeding in February 2022, and after a hearing, the district court entered a revised no-contact order in May 2022. The revised no-contact order stated that the intent of the district court with the original no-contact order had been "to establish no[] contact between Grandmother and [C]hild but [it]

3

failed to do so and, thus, created uncertainty." The revised no-contact order further found as follows:

> 5. To resolve the ambiguity, the [c]ourt finds Mother has a superior right in this matter to determine visitation under the [c]ourt's interpretation of the holding in *Troxel v. Granville*, 530 U.S. 57 . . . (2000) as it relates to this matter.

> 6. Mother no longer wants any contact between Grandmother and [C]hild.

> 7. Therefore, due to Mother's wishes, Grandmother shall have no contact with Mother or [C]hild in person or in any form, including but not limited to mail or packages in any form, electronic communications, or phone calls.

The revised no-contact order further prohibited Grandmother from approaching within 100 yards of Mother's home or place of business, contacting Mother or Child in a public place, or approaching within 100 yards of Mother or Child in a public place.

{6} In July 2022, the same judge who entered the revised no-contact order was assigned to the GVPA proceeding, which continued toward an October 25, 2022 bench trial, with a motions hearing set for October 12, 2022. The day before the hearing, Mother filed another motion to dismiss the petition based on the restrictions in the revised no-contact order. The district court reserved ruling on the motion to dismiss and ordered any responses to be filed before the October 25, 2022 trial setting.

4

{7}     To sum up the issue at the end of the October 12, 2022 hearing, the district court asked, "How is it that I can grant visitation under [the] grandparent visitation statute when I've already concluded, after extensive litigation and an evidentiary hearing, that no contact is in the best interests of the child?" Grandmother explained that she intended to offer expert testimony to establish that "very young children form deep psychological bonds to their primary caregivers, and if those bonds are disrupted, if they are torn apart, they can cause permanent attachment disorders for children that may not manifest until the child, like [Child], is much older." After the hearing, Grandmother filed a response to Mother's motion to dismiss and argued that the district court was "not precluded by an existing order in a different case decided under the [KGA] when determining visitation under the [GVPA] and that the [c]ourt can and should rightly grant Grandmother's [p]etition based on law and equity." Grandmother additionally maintained that the GVPA complaint was sufficient to survive a motion to dismiss.

{8}     At the October 25, 2022 bench trial setting, the district court reiterated, "You're asking for contact in—with the backdrop of having an order that has no— that provides you will have no contact." Grandmother maintained that the revised no-contact order was not the law of the GVPA case—only the law of the KGA case and that the revised no-contact order relied entirely on Mother's desire for no contact while the GVPA required analysis of the relationships between the parties. Mother

5

disputed Grandmother's characterization of the revised no-contact order and pointed to the undisputed facts related to Grandmother's behavior, as set forth in the motion to dismiss. The district court stated that the GVPA required consideration of the relationships between the people involved and that the adults in the present case had a hostile relationship. Grandmother repeatedly pressed the issue of important psychological attachments. But "based on the three-year history of this case," the district court did not "believe that it is in the best interests of this Child to have a relationship with the Grandmother when [it is] quite certain . . . in whatever format or forum in which it comes to the court, [it] is going to put the Child in the middle of a conflicted relationship."

{9}     The district court found that the revised no-contact order precluded "any contact" between Grandmother and Child, and as a result dismissed the GVPA petition for failure to state a claim without receiving Grandmother's evidence. Grandmother appeals.

**DISCUSSION**

{10}     Grandmother argues that (1) the GVPA petition stated a claim as a matter of law to withstand dismissal under Rule 1-012(B)(6) NMRA and the district court improperly relied on facts outside the pleadings; (2) the revised no-contact order did not preclude the GVPA proceeding; and (3) the district court improperly refused to permit Grandmother to present evidence in relation to the GVPA petition allegations.

6

We begin our legal analysis with the sufficiency of the GVPA petition and the impact of the district court's reliance on facts outside the pleadings. We then turn to the preclusive effect of the revised no-contact order and last evaluate whether the district court improperly declined to consider Grandmother's evidence.

**I.      Though the GVPA Petition Stated a Claim for Relief, Mother's Reliance on the Revised No-Contact Order Converted the Motion to Dismiss to a Motion for Summary Judgment**

{11}      "Dismissals under Rule 1-012(B)(6) are proper when the claim asserted is legally deficient." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917. To review the grant of a motion to dismiss, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). If, however, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 1-056 NMRA." Rule 1-012(C); *see also Delfino*, 2011-NMSC-015, ¶ 10 (acknowledging that appellate courts also "review motions to dismiss as motions for summary judgment when the district court considered matters outside the pleadings in making its ruling"). Grandmother argues that the district court did not consider all of the facts in the petition to be true and improperly considered matters outside the pleadings. We agree that Grandmother alleged sufficient facts to survive Mother's motion to dismiss, and that the district court considered the revised no-contact order

in deciding the motion, thus converting it from a motion to dismiss to a motion for summary judgment.

{12}    The GVPA requires two initial showings to maintain a petition for grandparent visitation: Section 40-9-2(C) "opens the door for a grandparent to seek visitation privileges under the [GPVA] upon threshold showings of residence and removal" and "[o]nce the Subsection (C) door is opened, Subsection (G) discusses various factors the district court is to assess when considering the merits of a grandparent's petition seeking visitation privileges." *French-Hesch v. French-Williams*, 2010-NMCA-008, ¶ 12, 147 N.M. 620, 227 P.3d 110. In relevant part, under Section 40-9-2(C), a grandparent may file a petition in the district court for visitation "if [the] minor child resided with a grandparent for a period of at least three months and the child was less than six years of age at the beginning of the three-month period and the child was subsequently removed from the grandparent's home by the child's parent or any other person." The "merits" of the petition are evaluated according to the factors listed in Section 40-9-2(G). *See French-Hesch*, 2010-NMCA-008, ¶ 12.

{13}    Grandmother sufficiently alleged the facts required by the GVPA to establish both the required threshold showing under Section 40-9-2(C) and the factors to be assessed to consider the merits of a GVPA petition under Section 40-9-2(G). Grandmother alleged that Child was born in June 2016, lived with her from April

8

12, 2018 until May 22, 2020, and contact with Child has "been completely cut off" since the termination of the kinship guardianship in May 2020. These allegations satisfy Section 40-9-2(C), which "opens the door" to the factors outlined in Section 40-9-2(G). *See French-Hesch*, 2010-NMCA-008, ¶ 12. Grandmother addressed these factors by alleging that visitation was in Child's best interests, the prior interaction between her and Child was "close and positive," contact had since "been completely cut off," Grandmother had previously been Child's kinship guardian and "played a significant role" in Child's life, and Grandmother had no prior convictions for abuse. *See* § 40-9-2(G). These allegations, if true, would satisfy the requirements of Section 40-9-2(G) and the complaint therefore stated a claim for visitation.

{14}   Nevertheless, because the district court considered matters outside the pleadings—the revised no-contact order—we review the district court's dismissal as a grant of summary judgment under Rule 1-056 and not a dismissal under Rule 1-012(B)(6). In that light, Mother was required to make a prima facie showing that she was entitled to summary judgment, which she did by presenting the revised no-contact order. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. The burden then shifted to Grandmother "to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *See id.* (internal quotation marks and citation omitted).

9

{15} Mother agrees that the motion was properly considered as a summary judgment motion, but maintains that judgment as a matter of law was appropriate because (1) the revised no-contact order "is controlling and effectively bars Grandmother's petition as a matter of law"; and (2) to the extent issue preclusion, or collateral estoppel, applies, "[c]ollateral estoppel gives effect in the present case to the determination underlying the revised no-contact order that contact between Grandmother and Child would not be in Child's best interests." Grandmother contends that the revised no-contact order impacts only the KGA proceeding, and the GVPA proceeding cannot be precluded because the revised no-contact order was based solely on Mother's wishes and in the KGA proceeding, the best interests analysis was incomplete, and all of the GVPA elements were not considered.

{16} On the one hand, we agree with Mother that the revised no-contact order is controlling and on the other, Grandmother stated a claim for visitation under the GVPA. The parties and the district court framed the issue as one of preclusion. But ordinary preclusion doctrines—like collateral estoppel and res judicata—are not always a good fit for the type of proceedings in this appeal, which by their nature, sometimes warrant relitigation of claims and issues. Ordinary preclusion doctrines are designed to "promote[] judicial economy and protect[] parties from endless relitigation." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577. Specifically, collateral estoppel prevents the relitigation of facts "actually and

necessarily decided in a prior suit," *id.* (internal quotation marks and citation omitted), while res judicata "prevents a party or its privies from repeatedly suing another for the same cause of action," *id.* ¶ 2. Both doctrines require some analysis of whether the same facts or legal issues have already been decided. *See id.* ¶¶ 2, 14. A different analysis is necessary for district courts with continuing jurisdiction that are attempting to manage a fluid family dynamic. Flexibility is necessary to address constantly changing circumstances, based on the nature of the order at issue. We therefore look more closely at the nature of the revised no-contact order and its practical impact on future proceedings.

## II. The Revised No-Contact Order Had Qualified Preclusive Effect and the GVPA Petition Operated as a Request to Modify the Revised No-Contact Order

{17} Neither the KGA nor the GVPA grant specific authority to enter a no-contact order. The entry of a no-contact order, absent specific authority, *see, e.g.*, the Family Violence Protection Act, *see* NMSA 1978, §§ 40-13-1 to -13 (1987, as amended through 2019), is an exercise of the general authority that our state constitution confers on district courts to enter injunctions. *See* N.M. Const. art. VI, § 13 ("[D]istrict courts . . . shall have power to issue writs of . . . injunction . . . in the exercise of their jurisdiction."). "Injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law." *Kennedy v. Bond*, 1969-NMSC-119, ¶ 17, 80 N.M. 734, 460 P.2d 809. It has long been established that "an

11

injunction is a rule of conduct merely imposed, for the time being, upon a litigant by the properly constituted authority." *Canavan v. Canavan*, 1914-NMSC-019, ¶ 10, 18 N.M. 640, 139 P. 154. If an "injunction is merely ancillary to the principal relief sought and is in terms granted until further order of the court, it is regarded as abrogated by the final judgment of the court granting the principal relief sought by the action and making no provision for continuing the injunction." *Id.* ¶ 7 (internal quotation marks and citation omitted).

{18}     Final relief, however, has unique features in family court proceedings, which often involve continuing jurisdiction to modify orders. Some orders in family court proceedings—like child custody and support in a divorce—are explicitly modifiable by statute. *See* NMSA 1978, § 40-10A-202 (2001) (providing for exclusive, continuing jurisdiction over child-custody determination); NMSA 1978, § 40-4-11.4(A), (C) (2021) (permitting modification of child support orders). In those cases, any injunctive relief granted during the pendency of the case is "abrogated" by the granting of "the principal relief sought by the action," *see Canavan*, 1914-NMSC-019, ¶ 7, but even the order granting or denying the final relief requested is modifiable provided that the party seeking modification makes the appropriate showing. *See Cherpelis*, 1996-NMCA-037, ¶ 18 (noting that "[o]f course, for domestic relations judgments the major qualification to finality is that courts retain the power to modify support orders when justified by a substantial change in

circumstances"). The district court in a GVPA proceeding has continuing jurisdiction to modify and enforce grandparent privileges. *See* § 40-9-3(A) (granting the district court authority to modify and enforce grandparent visitation privileges). And when a kinship guardian is appointed in a KGA proceeding, the district court has "continuing jurisdiction of the matter." *See* § 40-10B-14 (continuing jurisdiction). Thus, an injunction entered in a KGA or GVPA proceeding is ongoing and modifiable until otherwise ordered or until the district court's continuing jurisdiction to modify the order has ceased.

{19} Despite the modifiable nature of a no-contact order entered in a family proceeding in which the district court has ongoing jurisdiction, the strictures of such an existing order must apply broadly to all of the parties' conduct. The purpose of a protection order like the revised no-contact order is to "prevent future harm to a protected party by a restrained party." *Cf. Best v. Marino*, 2017-NMCA-073, ¶ 25, 404 P.3d 450 (considering a statutory order of protection). To achieve that purpose, a protection order must control the parties' conduct in relation to each other outside of that proceeding—whether in the world or in another case. As a result, contrary to Grandmother's position, restrictions found in the revised no-contact order are not limited only to the KGA proceeding. *Cf. Ortiz v. Gonzales*, 1958-NMSC-109, ¶ 24, 64 N.M. 445, 329 P.2d 1027 (holding that the district court was bound by an order entered in an earlier proceeding when determining whether that order could be

13

enforced in a subsequent and separate proceeding); *Greathouse v. Greathouse*, 1958-NMSC-032, ¶¶ 2, 4, 64 N.M. 21, 322 P.2d 1075 (concluding that a restraining order on property subjected that property to the jurisdiction of the district court and a subsequent action could not distribute that property). The revised no-contact order controls the conduct of the parties who are subject to it for as long as that order is in effect.

{20} Our conundrum is therefore that the revised no-contact order is both binding while it is in effect and modifiable, and Grandmother had standing to file a petition under the GVPA and alleged sufficient facts to support a claim. To address the impact of the revised no-contact order in the present case, the parties have taken somewhat extreme positions: Grandmother relegates the effect of the revised no-contact order to the KGA proceeding. We have already explained why the revised no-contact order must have broader effect. Mother contends that the revised no-contact order cannot be collaterally attacked. Collateral attack, however, is impermissible only as "an attempt to avoid, defeat, or evade a judgment, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking the judgment." *Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 10, 137 N.M. 152, 108 P.3d 558 (alteration, internal quotation marks, and citation omitted). The revised no-contact order is not a judgment. It is rather a modifiable "rule of conduct merely imposed, for the time being, upon a litigant by the properly

14

constituted authority." *See Canavan*, 1914-NMSC-019, ¶ 10. For this reason, we reject Mother's argument that relief from the revised no-contact order was available only "by a motion for reconsideration, an appeal, or a motion for relief from the order under Rule 1-060(B) NMRA." The district court's continuing jurisdiction in the KGA proceeding and the modifiable nature of the no-contact order create a procedural posture that is appropriately flexible for proceedings that evolve as unpredictably as families do. We conclude that this context—involving a modifiable order for injunctive relief in a family proceeding with continuing jurisdiction— recommends application of qualified issue preclusion.

{21} The preclusive effect of the revised no-contact order at issue here is similar to the preclusive effect of spousal support orders, which are "entitled to a qualified preclusive effect, modifiable in light of changed circumstances." *Cherpelis*, 1996-NMCA-037, ¶ 18. In *Cherpelis*, this Court explained that by statute, support orders are modifiable "when justified by a substantial change in circumstances," *id.*, and the party seeking to reopen the earlier decision carries the burden of production and persuasion to justify modification, *id.* ¶ 22. Orders for injunctive relief in family matters that provide for continuing jurisdiction are similarly modifiable—whether for changed circumstances or some other reason that the injunctive relief should no longer govern the parties' conduct. *See Canavan*, 1914-NMSC-019, ¶ 10 (referring to an injunction as a "rule of conduct"); *Wild Horse Observers Ass'n, Inc. v. N.M.*

15

*Livestock Bd.*, 2022-NMCA-061, ¶ 33, 519 P.3d 74 (noting that to impose injunctive relief "a district court must consider a number of factors and balance the equities and hardships" (internal quotations marks and citation omitted)); *see also* Restatement (Second) of Judgments § 13 cmt. c (1982) ("If the judgment was one granting continuing relief, and a change of circumstances makes the judgment too burdensome or otherwise inapposite as a regulation of ongoing conduct, it is ordinarily possible for the party concerned to apply to the rendering court for a modification of the terms of the judgment."). As a result, qualified issue preclusion applies. *See Cherpelis*, 1996-NMCA-037, ¶ 23 (rejecting issue preclusion when, "although technically correct, it would run counter to policy goals"). In that context, Grandmother, as the party seeking to benefit from modification of the earlier decision, had the burden to demonstrate that the revised no-contact order should be modified. *See id.* ¶¶ 20-21 (discussing the qualified issue preclusion burden).

{22}     Grandmother contends that the revised no-contact order is not the earlier decision, because the GVPA proceeding was filed before the KGA court revised the no-contact order to prevent contact between Grandmother and Child. Qualified issue preclusion under these circumstances, Grandmother argues, amounts to "retroactive" preclusion, because the petition was not precluded by any order at the time it was filed. By its nature as an injunction, however, the revised no-contact order suspends any earlier orders and future conduct, *see Canavan*, 1914-NMSC-

16

019, ¶ 10 (describing an injunction as imposed "for the time being"), until the no-contact order is resolved, *id.* ¶ 7 (providing that an injunction is abrogated by a final judgment that makes no provision for continuing the injunctive relief). Had the GVPA petition been granted before the revised no-contact order was entered, visitation would have been suspended until the no-contact order was resolved. Similarly, the filed GVPA petition did not limit the KGA court's authority to enter the revised no-contact order or its broad effect on the parties' future conduct, including visitation under the GVPA. The revised no-contact order suspended Grandmother's contact with Child, regardless of when it was entered in relation to the GVPA petition, and visitation as a practical matter could not happen until the suspension was lifted.

{23}    Lifting the suspension—in the form of the revised-no contact order—will not always take the same route and depends on the circumstances of the case. Generally, district courts may not direct orders "to judges or courts of equal or superior jurisdiction." N.M. Const. art. VI, § 13; *Child., Youth & Fams. Dep't v. Djamila B.*, 2014-NMCA-045, ¶ 14, 322 P.3d 444 ("One district court judge cannot set aside the order of another district court judge."). Thus, the district court with jurisdiction to modify the revised no-contact order must consider whether modification of its terms is appropriate. In the present case, the revised no-contact order and the GVPA petition existed in separate proceedings. Any grant of the GVPA petition—that was

17

not made subject to modification of the revised no-contact order—would necessarily have to overrule the revised no-contact order.[2] In the present case this prohibition was no barrier, because the same judge who entered the revised no-contact order also heard the GVPA matter and therefore had jurisdiction to determine whether genuine issues of material fact existed in relation to the GVPA petition or otherwise that would support modification of the revised no-contact order.

{24} As Mother points out, however, Grandmother did not request during the GVPA proceeding that the district court modify the revised no-contact order. Grandmother contends because the revised no contact-order had not been entered when the petition was filed, "[t]o expect Grandmother to request modification of a non-existent order is not logical." Both parties view each inquiry and each proceeding narrowly. But we do not. The role of the courts in a family law proceeding is to determine the best interests of a child, safeguard constitutional rights, and address the issues as they arise—practically and fairly in the context of all the circumstances. Both parties and the district court knew, at the summary

---

[2]The converse is not true—a district court may enter a no-contact order that impacts the terms of an existing order that was earlier entered by another court. As we have explained, by its nature as an injunction, a no-contact order does not set aside existing orders permitting contact, *see Canavan*, 1914-NMSC-019, ¶ 10, (describing an injunction as imposed "for the time being"), but merely suspends earlier orders until the no-contact order is resolved, *id.* ¶ 7 (providing that an injunction is abrogated by a final judgment that makes no provision for continuing the injunctive relief).

judgment hearings on the GVPA petition, that the revised no-contact order was an issue to be addressed.

{25} At the first summary judgment hearing, the district court explained,

> You have heard me say probably—I don't know—10,000 times—probably 20,000 times—the number—after sexual abuse, the number one harm that parents or adults do to children is put them in the middle of a war zone. Conflict is guaranteed, according to the therapists that have testified before me as experts, guaranteed to traumatize the child. Now, what you've done is, without a motion to reconsider, without an appeal, you are asking this court to essentially reconsider its own—its own order of May 20th, when I ruled that it was in the best interest of the Child to have no contact with Grandma and to have no contact with bio mom. And now you're saying, well, we'd like some visitation rights. Now at the very nub of your case is a question that must be answered. And that question is how—what do you expect this court to legally do with its finding—both a finding and a conclusion of law—that there should be no contact between Grandma and Child? What do you expect me to do—that stands now as a law of the case.

At the next setting, the district court recited the court's prior view of the case, noted that the evidence that Grandmother proffered would not be persuasive given the parties' history, and declined to allow Grandmother to present any evidence. The district court again asked about the legal impact of the revised no-contact order and noted its own continuing jurisdiction to address changes in circumstances. The impact of the revised no-contact order on the GVPA petition was squarely before the district court. Thus, though Grandmother did not seek modification of the revised no-contact order, the district court knew modification based on changed circumstances was an appropriate inquiry but nevertheless dismissed the GVPA

19

petition as precluded as a matter of law. Whether that decision was correct is the question that remains.

### III. Grandmother Was Entitled to Offer Evidence to Demonstrate That the GVPA Petition Created a Genuine Issue of Material Fact

{26}     To recap, the district court had before it a GVPA petition and as the basis for dismissing the petition, Mother presented the revised no-contact order that was entered in the separate KGA proceeding. As we have explained, the necessary question was whether the revised no-contact order should be modified in light of Grandmother's GVPA petition and any other changed circumstances.

{27}     Grandmother argues that the district court granted summary judgment despite disputed material facts and without permitting Grandmother to present necessary evidence. *See* Rule 1-012(C) (explaining that when a Rule 1-012(B)(6) motion is treated as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 1-056"). Grandmother contends that additional evidence would have affected the district court's balance of Child's best interests. Grandmother argues that (1) under the GVPA, the issue of Child's best interests is specific to whether visitation with a grandparent is in the child's best interests; and (2) Mother's wishes weigh more heavily in a custody context like the KGA proceeding than in a GVPA proceeding. Mother essentially argues that Grandmother's evidence to support the GVPA petition is immaterial. Although we disagree with Grandmother that the best interests

20

analysis is fundamentally different in the GVPA proceeding, we conclude that Grandmother's proffered evidence was material to modification of the revised no contact order and therefore should have been considered by the district court.

{28}    We reject Grandmother's position that the GVPA requires a fundamentally different best interests analysis, because a GVPA proceeding involves minor children, and it is well established that "'in every proceeding in which minor children are involved, a court's primary obligation is to further the best interests of the child.'" *N.M. Hum. Servs. Dep't v. Toney*, 2019-NMCA-035, ¶¶ 1, 24, 444 P.3d 1074 (considering child support obligations and citing cases involving termination of parental rights, parentage, and parental support (quoting *Wasson v. Wasson*, 1978-NMCA-092, ¶ 4, 92 N.M. 162, 584 P.2d 713)). In entering the revised no-contact order, the district court also considered the wishes of the custodial parent—Mother—about Grandmother's visitation.[3] *See Wild Horse Observers Ass'n, Inc.*, 2022-NMCA-061, ¶ 33 ("In determining whether to grant injunctive relief, a district court must consider a number of factors and balance the equities and hardships." (internal quotation marks and citation omitted)). This was appropriate because, as

---

[3] A KGA proceeding does not always involve a custodial parent and a grandparent, and the interests to be protected will shift depending on the rights of the parties to the particular dispute. *See State, ex rel. Child., Youth & Fams. Dep't v. Djamila B.*, 2015-NMSC-003, ¶ 32, 342 P.3d 698 (noting that the law must be harmonized "to preserve family unity when children have unconventional family structures involving both biological parents and kinship guardians").

the United States Supreme Court has explained, "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental rights of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. From this right arises "the traditional presumption that a fit parent will act in the best interest of [their] child." *Id.* at 69. And for that reason, "if a fit parent's decision" regarding intergenerational visitation "becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* at 70. Grandmother argues that this special weight applies to a KGA determination but not the GVPA.

{29}     Though the GVPA does not explicitly account for a custodial parent's wishes in its statutory balance, statutes are to be given effect "[w]ithin the constitutional limits." *Cf. Coe v. City of Albuquerque*, 1966-NMSC-196, ¶¶ 9, 10, 76 N.M. 771, 418 P.2d 545 (declaring a statute to be void to the extent it permitted "an unconstitutional delegation of power"). When Mother sought to prevent Grandmother's contact with Child, Mother exercised the fundamental right we have already described—the right "to make decisions concerning the care, custody, and control of their children"—in the context of grandparent visitation, just as in *Troxel*. *See Troxel*, 530 U.S. at 66, 70. Thus, the GVPA's requirement that the district court assess "any factors relevant to the best interests of the child," *see* § 40-9-2(G)(1), includes weighing the custodial parent's wishes regarding visitation. *See State v.*

22

*Rael*, 2024-NMSC-010, ¶ 47, 548 P.3d 66 (explaining that appellate courts endeavor to construe statutes, if possible, "to avoid constitutional questions" (internal quotation marks and citation omitted)). As a result, the required legal showing for the child's best interests under the GVPA, contrary to Grandmother's argument, is no different from any analysis of the best interests of a child that also implicates a parent's fundamental right.

{30} Nevertheless, we agree with Grandmother that the district court should have considered the remaining GVPA factors and the additional evidence that she intended to present. *See* § 40-9-2(G)(2)-(8) (describing the additional factors). Grandmother proffered the evidence of an expert on attachment disorder to testify about how cutting off visitation affects a child, as well as Grandmother's own testimony about her desire to repair the relationship with Mother and her close relationship with Child. Such evidence could create a genuine issue of material fact about whether under the current circumstances, modification of the revised no-contact order is justified and visitation under the GVPA is appropriate. *See* Rule 1-056(C) (stating that summary judgment must be rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). The district court declined to receive additional evidence and granted summary judgment based on the

existence of the revised no-contact order, without giving Grandmother a "reasonable opportunity to present all material made pertinent" to Mother's motion. *See* Rule 1-012(C).

**IV.    We Decline to Outline the Procedure on Remand**

{31}    The parties disagree about the necessary procedure on remand. Mother contends that the revised no-contact order could be modified only in the KGA proceeding. Grandmother contends that the revised no-contact order need only be considered as evidence within the weight of the GVPA factors and that if the GVPA petition is successful, the revised no-contact order dissolves. We observe that the circumstances of the present case demonstrate why a procedure proscribed by us is not only unhelpful but detrimental to the flexibility of the district courts in family court proceedings.

{32}    The district court in the present case, by happenstance, had jurisdiction over both cases and could address both orders simultaneously. *See* Rule 1-042 NMRA (addressing consolidation of cases). The district court's error was not in addressing both issues but in not allowing Grandmother to present the evidence to support her claim. Alternatively, had Grandmother returned to the KGA proceeding and sought modification of the revised no-contact order based on the allegations that she asserts in the GVPA petition or any other changed circumstances, the revised no-contact order could have been amended. If the suspension on visitation were lifted,

24

Grandmother would be free to pursue visitation under the GVPA. In yet a third scenario, Grandmother could have litigated the GVPA petition with the revised no-contact order acting as evidence within the weight of the statutory factors. But any order for visitation that she obtained would remain suspended until the revised no-contact order was modified. We hesitate to dictate the procedure on remand because the district court and the parties are in the best position to decide how they wish to move forward within the legal framework that we have constructed.

**CONCLUSION**

{33}     For the reasons stated herein, we reverse and remand.

{34}     **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**JACQUELINE R. MEDINA, Judge**


_____
**ZACHARY A. IVES, Judge**